## 9508

## VAN EPPS *ET AL.* v. ATLANTIC COAST LINE R. CO.

### (89 S. E. 1035.)

1. CARRIERS—CARRIAGE OF GOODS—ACTION FOR DAMAGES—BURDEN OF PROOF.—In an action for damages for negligent delay in transporting a shipment of beans, the plaintiffs were required to show negligence arising out of an unreasonable delay, and also that such negligence was the proximate cause of the damage.

2. CARRIERS—SHIPMENT OF GOODS—ACTION FOR DAMAGES—EVIDENCE.—In such action evidence that the plaintiffs informed the carrier's agent as to the time the beans were to be sold at destination was admissible, as tending to prove an element of damage.

3. CARRIERS—DAMAGED GOODS—QUESTION FOR JURY—DELAY.—Where the evidence is susceptible of more than one inference, the question whether a carrier failed to transport goods with reasonable dispatch was for the jury, and the trial Court could not direct a verdict without invading the province of the jury.

4. CARRIERS—INTERSTATE SHIPMENT—CARMACK AMENDMENT—DELAY OF INTERMEDIATE CARRIER.—The Carmack Amendment (act June 29, 1906, c. 3591, sec. 7, pars. 11, 12, 34, Stat. 593 [U. S. Comp. St. 1913, sec. 8592)], requiring the initial carrier of an interstate shipment to issue a receipt or bill of lading, and making it liable for loss or damage by connecting carriers, makes an initial carrier responsible for a delay occurring on its own line or on the line of a connecting carrier, without physical damage to the goods.

5. CARRIERS—CARRIAGE OF GOODS—ACTION FOR DAMAGES—INSTRUCTION.—In an action for damages from a carrier's negligent delay in transporting a shipment of beans to market, a charge that, if a shipper proves by the greater weight of the evidence an unreasonable delay in delivery of his goods at destination, it is *prima facie* evidence of negligence which must be overcome by the carrier; and that, while the burden of proving negligence was on the shipper, yet on his proof of unreasonable delay and damage as a proximate result thereof the carrier, unless showing by the greater weight of the evidence that the delay was not caused by any negligence on its part or on connecting lines, would be liable, considered in its entirety, was not prejudicial, as a ruling that mere delay tended to show negligence.

FOOTNOTE.—As to relief from award, see notes in 47 L. R. A. (N. S.) 445. As to qualifications and characteristics of arbiters, see notes in 47 L. R. A. (N. S.) 340. As to concurrent jurisdiction at law and in equity in cases of fraud, see 3 A. & E. Ann. Cas. 611, 13 A. & E. Ann. Cas. 756, 43 L. R. A. (N. S.) 924, 48 L. R. A. (N. S.) 265.

Before Prince, J., Florence, April, 1915.    Affirmed.

Action by H. Van Epps and D. Moultrie Epps, copartners trading under the firm name and style of Epps & Epps, against the Atlantic Coast Line Railroad Company.    Judgment for plaintiffs, and defendant appeals.

*Mr. F. L. Willcox,* for appellant, cites: *As to damages from delay of carrier:* 15 Ga. App. 751; Hutchinson Carriers, sec. 651; 109 Mo. App. 567; 83 S. W. 52; 72 S. C. 398; 179 U. S. 658; 226 U. S. 491.

*Mr. P. H. Arrowsmith,* for respondent, cites: Barnes Interstate Commerce, sec. 159; 2 I. C. C. R. 594; 2 A. & E. Enc. of L. 841; 88 S. C. 172; 78 S. C. 8; 88 Am. St. Rep. 74.    *Excuses for delay:* 91 S. C. 61; 136 Mo. App. 404; 88 S. W. 417; 53 S. W. 444; 114 Mo. App. 488; 28 Mont. 297; 235 Penn. 232; 150 S. W. 1188.

September 14, 1916.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

This is an action for damages in which the plaintiffs allege that on the 29th of May, 1914, at Lake City, in the State of South Carolina, they delivered to the defendant 425 baskets of beans, consigned to the party therein named in the city of New York; that, by reason of negligence on the part of the defendant in transporting said shipment of beans to their destination, they were so delayed in carriage as to devolve upon plaintiffs a loss of $333.33; said shipment not having arrived at the point of destination until the 3d of June, 1914, a period of six days in transit.

The defendant denied the allegations of negligence, and set up as a defense that it was agreed by the shippers that the

freight was not to be carried or delivered for or with reference to any specified time, but only with such reasonable dispatch with reference to other business of the carrier as the general business would permit; that the carriers should not be liable for any injury to or delay of fruits and vegetables or other perishable freight due to detention or delay occasioned by an accumulation of freight at any point, or to the breaking down of engine or cars, or to any other causes over which the carriers had no control; that the delay, if any, which occurred in delivering the fruit in question at destination was caused by an accumulation of freight at the point of destination, and by other causes over which the carriers had no control.

The jury rendered a verdict in favor of the plaintiffs, but the amount thereof is not disclosed in the record. They, however, could not have found a verdict in favor of the plaintiffs for an amount exceeding $333.33, under the charge of his Honor, the presiding Judge. The defendant appealed upon exceptions, which will be reported.

The first question we will consider is presented by the first exception, assigning error on the part of his Honor, the presiding Judge, in permitting the witness, D. M. Epps, to testify that plaintiffs notified defendant of the time the beans in question were to be sold. This question arose as follows:

"Did you make the agent of the company at Lake City aware of the time they were to be sold in New York? (Objected to on the ground that the bill of lading introduced provided that the freight is not to be carried and delivered for or with reference to any particular market, or in any specified time in consideration of special arrangements and rate, and any testimony as to what market the goods were bought for, in view of the contract between the parties, would not be relevant, or would not lay the foundation for any claim.)

"Mr. Arrowsmith: Our position is not to establish any special contract, but to show notice to the carrier; to show that they knew the basis on which these beans were bought.

"The Court: I will permit it. (Exception noted by defendant.)"

It was not only necessary for the plaintiffs to show negligence arising out of an unreasonable delay, but that such negligence was the proximate cause of the damages. The testimony was competent on the ground that it tended to prove an element of damages.

In the case of *N. Y., P. & N. Ry.* v. *Pen. Produce Exch.*, 240 U. S. 34, 36 Sup. Ct. 230, 60 L. Ed. —, the Court had under consideration the following question:

"Was the plaintiff entitled to recover because its shipment failed to arrive in time for the market of May 28th, when the regulations under which the shipment moved were published in tariffs duly on file with the Interstate Commerce Commission, and specifically provided, 'No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market, or otherwise than with reasonable dispatch, unless by specific agreement indorsed hereon?'"

In disposing of that question the Court said:

"As the Court of Appeals of Maryland said, the ground of the action was the failure to carry with reasonable dispatch, and the loss of marketability is mentioned as the element of damage. That is, the reference to the market said to have been lost was merely for the purpose of calculating damages, which were sought solely because of lack of reasonable diligence, and not upon the allegation of any added duty with respect to a particular train or market. The stipulation invoked does not attempt to limit the duty of the carrier to transport with reasonable dispatch."

This is conclusive of the question raised by this exception.

We next proceed to determine whether there was error on the part of his Honor, the Circuit Judge, in refusing to direct a verdict.

The plaintiffs and the defendants both introduced testimony tending to show the circumstances under which the delay occurred. The question whether the carrier failed to transport with reasonable dispatch, raises an issue for the jury. *Commins* v. *Railway,* 78 S. C. 8, 58 S. E. 944. The rule is thus stated in 2 Enc. of Law (1st ed.) 841:

"It has been said that what is a reasonable time is not susceptible of definition. The circumstances of the particular case must be adverted to. The mode of conveyance, the distance, the nature of the goods, the season of the year, the character of the weather, and the ordinary facilities of transportation are to be considered in determining whether in the particular case there has been any unreasonable delay. The character of the freight, whether ordinary merchandise, such as iron, wool, cotton, grain, etc., or whether perishable goods, such as live stock, fish, oysters, fruit, vegetables, etc., must be considered because in the first case their character would not suggest probable damage from delay, whereas in the second it would. The season of the year is also to be considered, because the delay at one time might be harmless, whereas at another it would do serious injury. The question as to the carrier's diligence and a reasonable time is for the jury."

The testimony was susceptible of more than one inference. Therefore the Circuit Judge could not have directed a verdict without invading the province of the jury.

The fourth exception raises the question whether the initial carrier is responsible for the negligence of a connecting carrier.

In the case of *N. Y., P. & N. Ry.* v. *Pen. Produce Exch.,* 240 U. S. 34, 36 Sup. Ct. 230, 60 L. Ed. ——, the Court was

called upon to decide the question whether the Carmack Amendment imposes on the initial carrier liability for delay occurring on the line of its connection without physical damage to the property. The Court used this language:

"It is said that there is a different responsibility on the part of the carrier with respect to delay from that which exists where there is a failure to carry safely. But the difference is with respect to the measure of the carrier's obligation; the duty to transport with reasonable dispatch is none the less an integral part of the normal undertaking of the carrier. And we can gather no intent to unify only a portion of the carrier's responsibility."

See *Piero* v. *Southern Exp. Co.*, 103 S. C. 467, 88 S. E. 269. See, also, *A. C. L. Ry.* v. *Glenn,* 239 U. S. 388, 36 Sup. Ct. 154, 60 L. Ed. —.

The fifth exception assigns error in the ruling that mere delay tended to show negligence. This is not the proper inference to be drawn from the charge when considered in its entirety. The presiding Judge charged that:

"If a shipper comes into Court and proves by the greater weight of the evidence that there was an unreasonable delay in the delivery of his goods at the point of contract destination, that itself is *prima facie* evidence of negligence—that is, some evidence of negligence—and it must be overcome by the carrier, if he would escape responsibility by the greater weight of the evidence in the case. * * *

"I charge you in this case that the plaintiffs have come into Court predicating their cause of action on negligence of the defendant, or one of its connecting lines, and the burden of proving that allegation by the greater weight of the evidence is upon them, because they have alleged it; but if they have proved to your satisfaction, by the greater weight of the evidence, that there was an unreasonable delay, that the shipper suffered loss as a proximate result

of that unreasonable delay, unless the defendant has come into Court and shown by the greater weight of the evidence that that delay was not caused on its part by any negligence, or any negligence of its connecting lines, you will find for the plaintiffs."

In this there was no prejudicial error.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

Messrs. Justices Fraser and Gage concur in the opinion of the Court.

Mr. Justice Hydrick, *dissenting.*    I think there should be a new trial for the error complained of in the charge as to the burden of proof.

Mr. Justice Watts, *dissenting.*    This is an action for an alleged injury of plaintiffs by reason of the alleged negligence and carelessness of the defendant in transporting two carloads of beans consigned to be sold in the New York markets.    They were delayed in carriage so as to devolve upon the plaintiffs a loss.    Had they been delivered on time they would have sold for $369.75 net, but by the delay they sold only for $37.40 net.    The case was tried before Judge Prince and a jury at the April term of the Court, 1915, and at the conclusion of the testimony a motion was made by the defendant for a directed verdict in its favor, which was refused, and the case submitted to the jury, which resulted in favor of the plaintiffs.

After entry of judgment defendant appealed.    The second ground of appeal is:

(2) His Honor erred, it is respectfully submitted, in not directing the jury to find a verdict for the defendant, upon motion made by defendant at the close of the testimony. He should have granted the motion so made, because: (a) The complaint is based upon an allegation of negligence,

and because there was no evidence introduced tending to support this allegation, the mere fact that the beans did not reach their destination at a particular time, and the fact that trouble with the equipment, of the character testified to, occurred in transit, not being sufficient to tend to show negligence; (b) a carrier, by the law as announced by the trial Judge, is not an insurer against delay, and because the delay in this case is shown by all the testimony was due to causes beyond the control of defendant, which could create liability only in case the liability of defendant was that of an insurer; (d) under the stipulations of the bill of lading in reference to defendant's obligation to deliver promptly, there was no possibility of liability on account of the character of the handling and delivery as disclosed by all of the evidence.

We are inclined to the opinion that a verdict should have been directed as asked for, the plaintiffs based their action upon negligence, and the mere fact that the beans did not reach their destination on schedule time and the mere fact that trouble occurred in the equipment of the cars used for transporting the property raises no presumption of negligence. The only inference that can be drawn from the evidence in the case is that while the shipment was in transit between Lake City, S. C., and Jersey City, N. J., was the bursting of a brass in the case of one of the cars, and to the appearance of what is described as a "shell tread" wheel in the case of the other car. The evidence shows either of these conditions are liable to occur at any time in the movement of the cars, notwithstanding the highest degree of care shall have been exercised in the preparation of the equipment and its inspection. As it was one car reached Jersey City 12 hours late and the other 24 hours late according to schedule time. At times accidents will happen to machinery notwithstanding the highest degree of care in its manufacture and inspection. Notwithstanding the fact that in the transportation of a passenger the common carrier is held to the highest degree of care if there was a delay of several hours

in the passenger reaching his destination by reason of the
cars being delayed, by reason of a "hot box," or something
like it, and this fact alone appeared, the Court would hardly
award him damage for delay alone.

The mere happening of the accident in the case at bar
raises no presumption of negligence on the part of the
defendant so as to entitle the plaintiffs to recover.    There
is neither allegation nor proof that the property consigned
was destroyed or injured; only that the plaintiffs sustained
a loss by a drop in the market by reason of the defendant's
failure to run its train on schedule time.    It is impossible
to run passenger trains or freight trains at all times accord-
ing to its schedule.    There must be no unreasonable delay.
The evidence shows in one car a delay of 12 hours and the
other car a delay of 24 hours.    The defendant was not
insuring its schedule, and the fact that the goods were safely
transported and delivered in good condition, notwithstand-
ing there was a delay, does not entitle the plaintiffs to
recover by reason of a drop in the market.    There is noth-
ing in the case to show that the defendant failed to run its
train on schedule time by reason of its failure to exercise
due care and diligence to guard against delay, or that there
was any fault or negligence on its part to deliver the goods
consigned to its care, at the proper place on schedule time.
The fact that the train was delayed and failed to reach Jer-
sey City on schedule time was not itself sufficient to raise
such a presumption of negligence as would entitle the plain-
tiffs to recover.    They must have known that the schedule
of any freight train is not insured.

Under the bill of lading issued in the case, which was the
contract between the parties, it provided for loss, injury, or
damage to property shipped.    There was no loss of prop-
erty; no injury or damage to the property shipped.    The
plaintiffs were injured in a drop in the market by the delay
in the shipment not reaching its destination on schedule time.
Under the fact in the case defendant was not required to

use extraordinary diligence to deliver the goods on schedule time; they made no contract to that effect. The loss sustained was not for a failure to deliver the article nor an injury to the article, but for a failure to deliver on the published or informed schedule. The defendant under all of the circumstances in the case used ordinary diligence, and cannot be held for a drop on the price by reason of the delay. It would be a hardship to hold a common carrier liable for a delay that occurred by reason of its failure to run its freight train on its schedule time when the delay occurred through something unexpected that turns up. They are responsible for loss or damage, for injury to property in their possession, for transportation, but they cannot be held liable for a drop in the market unless it is shown that the delay was unreasonable on their part in the absence of any contract between them to the contrary.

The only inference that can be drawn from the evidence in the case was that the articles consigned were transported with all reasonable speed, and that they were delivered in good condition, and the only loss plaintiffs sustained was to have to sell on a different market from the day they anticipated. To fix the liability of loss under such circumstances was never contemplated between the parties when the shipment was made, and would be extending the rule beyond reason to allow recovery under such circumstances.

I think the judgment should be reversed.